UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFREY MILLER,

                    Plaintiff,                          Case No. 1:26-cv-1017

v.                                                      Honorable Robert J. Jonker

BARBRA HOOVER,

                    Defendant.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint

counsel. (ECF No. 3.)

**Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Barbra Hoover, Physician Assistant, in her official capacity.

On May 25, 2025, Plaintiff was "assaulted on the general population yard," and he alleges that his hand became "extremely swollen and painful." (Compl., ECF No. 1, PageID.5.) Plaintiff went to health services upon his release from segregation and unnamed, non-party health care staff provided him with an ace wrap and ice. (*Id.*) According to Plaintiff's complaint, an x-ray conducted on June 4, 2025 "concluded that there was a fracture of the proximal second metacarpal [i.e. fracture at the base of the index finger] . . . [and a] displaced intra-articular fracture [i.e. fracture at the joint]." (*Id.*) Plaintiff was seen by unnamed, non-party health care staff on June 16, 2025, and given ibuprofen and Tylenol for his pain. (*Id.*) On June 23, 2025, Plaintiff was assessed again by unnamed, non-party health care staff and "scheduled to see a medical provider." (*Id.*, PageID.6.) Plaintiff states he was "ordered to return the splint and the ace wrap" at the June 23, 2025, appointment by the unnamed, non-party health care staff member. (*Id.*)

On June 26, 2025, Plaintiff was examined by Defendant Hoover for the first time. (*Id.*) At that visit, she prescribed him a sixty-day supply of Naproxen and ordered new x-rays. (*Id.*) Plaintiff alleges that he also requested a cast, splint, or ace wrap and that Defendant Hoover "denied [his] request" because it was not "medically indicated." (*Id.*) Plaintiff's x-rays were taken on July 2, 2025, and reviewed by Defendant Hoover on July 3, 2025; Plaintiff contends that Defendant "refused to order the re-application of the orthopedic splint and ace wrap despite the x-rays

2

showing that [his] hand was not healing." (*Id.*) On July 21, 2025, Plaintiff submitted a request for medical attention because his "fingers were numb." (*Id.*)

On July 30, 2025, Plaintiff had an appointment with Defendant Hoover. (*Id.*) Defendant ordered another set of x-rays and again "denied [Plaintiff's] request" for an orthopedic splint and ace wrap, explaining: "At this point[,] it doesn't seem necessary." (*Id.*) According to Plaintiff, the x-ray on August 6, 2025, showed there was "probably some healing" of his fracture. (*Id.*)

At an August 14, 2025, appointment with Defendant Hoover, after his August 6, 2025, x-ray, Plaintiff and Defendant discussed treatment options. (*Id.*) At the appointment, Plaintiff asked Defendant Hoover to "impose a physical restriction detail specifying certain limitations to [Plaintiff's] ability to work" as a wheelchair pusher and aide. (*Id.*, PageID.7.) Defendant did not provide Plaintiff with a standing order to restrict him from certain job duties as a wheelchair pusher and aide, "and instead ordered that [Plaintiff's] hand be splinted and instructed [him] to not use his hand." (*Id.*)

Plaintiff's next x-ray was on November 5, 2025, and the x-ray showed "continued healing of the fracture."[1] (*Id.*, PageID.7.) Plaintiff was supposed to have appointments with Defendant Hoover on November 12, 2025, and November 25, 2025, but the appointments were "suspended due to facility operations." (*Id.*)

On January 9, 2026, Plaintiff was seen by Defendant Hoover, and she ordered another set of x-rays due to "concerns about the significant swelling that still remained and the possibility that the bones were not healing properly." (*Id.*) An x-ray performed on January 14, 2026, "indicat[ed]

---

[1] Plaintiff does not indicate that he sought medical attention for his hand between his appointment on August 14, 2025, and the x-ray on November 5, 2025.

that [Plaintiff's hand] was still healing." (*Id*.) Plaintiff alleges later in his complaint that Defendant provided a referral for an orthopedic consultation in or around January 2026. (*See id.*, PageID.9.)

Based on the foregoing allegations, Plaintiff avers that Defendant Hoover violated his Eighth Amendment rights relating to his medical care. Plaintiff seeks punitive damages.

## II.      Motion to Appoint Counsel

Plaintiff filed a motion to appoint counsel to represent him in this matter. (ECF No. 3.) Plaintiff alleges that he is unable to afford counsel and this matter "will require medical expert testimony[,] . . . discovery, . . . [and] conflicting testimony." (*Id.*, PageID.50.) Plaintiff states further that a lawyer would enable him to "present evidence and cross[-]examine witnesses." (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will, therefore, be denied.

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Section 1983 Official Capacity Claims**

Plaintiff sues Defendant Hoover in her official capacity only. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Defendant Hoover is a "Physician Assistant, Medical Provider" at LRF (Compl., ECF No. 1, PageID.2), but it is not clear based upon Plaintiff's complaint whether Defendant Hoover is an employee of the MDOC or of a private entity that contracts with the state. The Court will address both scenarios in turn.

1.      **Defendant's Employment by the MDOC**

If Defendant Hoover is employed by the MDOC, Plaintiff's official capacity claim is equivalent to a claim against the MDOC.

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.9–10.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g., Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages

6

against Defendant Hoover in her official capacity. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Accordingly, if Defendant Hoover is employed by the MDOC, Plaintiff's official capacity claim against Defendant Hoover will be dismissed for failure to state a claim.

### 2. Defendant's Employment by a Prison Medical Provider that Contracts with the State

If Defendant Hoover is employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claim is equivalent to a suit against the private entity. A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury,

and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the entity. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff fails to allege that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of the private entity, Plaintiff's official capacity claim against Defendant Hoover, if she is employed by a private entity that contracts with the state to provide healthcare to inmates, will be dismissed for failure to state a claim.

### 3.    Summary

In summary, for the reasons set forth above, Plaintiff fails to state any § 1983 claims against Defendant Hoover in her official capacity. In this action, Plaintiff sues Defendant in her official capacity only. (Compl., ECF No. 1, PageID.2.) Therefore, for this reason alone, Plaintiff's § 1983 claims are subject to dismissal for failure to state a claim. Furthermore, as set forth below, even setting this issue aside and considering the merits of Plaintiff's claims against Defendant Hoover in her individual capacity, Plaintiff fails to state any claim against Defendant Hoover upon which relief may be granted.

### B.    Individual Capacity Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendant Hoover violated his Eighth Amendment rights as related to her examinations and treatment of his hand injury. (*See* Compl., ECF No. 1, PageID.7–9.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

10

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

Plaintiff alleges that he had a fracture in his finger and at the finger's joint. (Compl., ECF No. 1, PageID.5.) He further alleges that this injury causes pain and limited mobility of his hand, which has affected his ability to perform everyday activities. (*See id.*, PageID.5–9.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

### 2.    Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the

11

official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against Defendant Hoover below.

Plaintiff claims that Defendant Hoover violated his rights under the Eighth Amendment because she "was aware of [his] need for a cast yet she continuously denied his request." (Compl., ECF No. 1, PageID.9.) However, contrary to Plaintiff assertions, Plaintiff's factual allegations describe medical treatment based upon Defendant Hoover's assessments and treatment decisions, and the factual allegations show that Defendant Hoover was responsive to Plaintiff's concerns. For example, when Defendant Hoover first examined Plaintiff on June 26, 2025, although she did not extend the approval for a cast or splint, which was what Plaintiff wanted her to do, she made a treatment decision based upon her examination of Plaintiff and prescribed Naproxen and a new set of x-rays. (*Id*., PageID.6.) Then, after two further appointments with Defendant Hoover and two further x-rays, Defendant approved a splint on August 14, 2025, after assessing Plaintiff's most recent x-rays. (*Id*., PageID.6–7.)

Plaintiff further claims that Defendant Hoover unconstitutionally delayed his referral to an outside orthopedic provider until January 2026. (*See id.,* PageID.9.) However, Plaintiff's factual allegations show that Defendant Hoover was responsive to Plaintiff's medical concerns, continued to examine Plaintiff based on his continued complaints regarding his hand, and ordered additional diagnostic tests to aid in her treatment determinations. Specifically, between August of 2025 and January of 2026, Plaintiff had at least five appointments with Defendant Hoover, and Defendant ordered x-rays of Plaintiff's hand on four occasions. (*Id*., PageID.6, 7.) Then, in January of 2026, Defendant Hoover determined that a referral to an outside orthopedic provider would be appropriate because the "x-rays showed that the bones were healing improperly." (*Id*., PageID.9.) Although Plaintiff characterizes the time between August of 2025 and January of 2026 as a "delay"

in his receipt of medical treatment, Plaintiff's own allegations show that there was no delay in his receipt of medical treatment during this period of time. It is clear that Plaintiff wanted to receive different treatment during this period of time, but Plaintiff's disagreements with Defendant Hoover's treatment decisions are insufficient to state an Eighth Amendment medical care claim.

In summary, Plaintiff's allegations against Defendant Hoover amount to faulting Defendant Hoover for "fail[ing] to provide more or better treatment, not indifference to his condition." *Mitchell*, 553 F. App'x at 605. As detailed above, Plaintiff was examined by Defendant Hoover at least five times, received several different medical treatments to address Plaintiff's pain and swelling, and received at least four diagnostic x-rays. (*See* Compl. ECF No. 1, PageID.5–9.) Differences in judgment regarding medical diagnoses or treatment are not enough to state a deliberate indifference claim. *See Darrah*, 865 F.3d at 372; *see also Estelle*, 429 U.S. at 105 ("[T]he question whether . . . additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment."). Plaintiff asks the Court to second guess Defendant Hoover's medical judgments, "as opposed to enforce the cruel-and-unusual-punishments ban in the Eighth Amendment." *Mitchell*, 553 F. App'x at 605. Therefore, because Plaintiff fails to show that Defendant Hoover's actions constituted deliberate indifference, Plaintiff fails to state an Eighth Amendment claim against Defendant Hoover.

Accordingly, Plaintiff's Eighth Amendment claims against Defendant Hoover will be dismissed for failure to state a claim.

### Conclusion

For the reasons set forth above, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 3). Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an

13

appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.


Dated:    June 10, 2026                              /s/ Robert J. Jonker
                                                     Robert J. Jonker
                                                     United States District Judge